IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CARMENCITA MARÍA PEDRO**, *et al.*, *Plaintiffs* | : : : | CIVIL ACTION |
| v. | : : | NO. 24-CV-5725 |
| **HILTON WORLDWIDE, INC.**, *et al.*, *Defendants* | : : : | |

**M E M O R A N D U M**

NITZA I. QUIÑONES ALEJANDRO, J.                                                                      JANUARY 16, 2025

Currently, before the Court is a Complaint filed by Plaintiffs Carmencita María Pedro and her son, Kerry Lorenzo Fisher, Jr., asserting claims under federal and state law based on their ejectment from a hotel room where Fisher was residing. (ECF No. 1.) They also seek leave to proceed *in forma pauperis*. For the reasons set forth, the Court will grant Pedro and Fisher leave to proceed *in forma pauperis* and will dismiss their Complaint.

**I.     FACTUAL ALLEGATIONS**[1]

Fisher lives with "the chronic psychiatric disability of Schizophrenia in addition to other chronic medical conditions," and Pedro, his mother, serves as his "support person, designated agent, home health aide, and Power of Attorney." (Compl. at 2, ¶¶ 2, 6 (emphasis omitted).) Beginning in December 2022, Fisher, who is "chronically homeless," was hospitalized for twenty-one months in connection with his psychiatric issues. (*Id.* at 5.) During that time, he was awaiting placement for permanent housing through the City of Philadelphia and/or Community Behavioral Health. (*Id.* at 5-6.) When Fisher was discharged from the hospital on September 3, 2024 (improperly according to the Complaint), he began living at Homewood Suites by Hilton

---

[1] The following allegations are taken from the Complaint, exhibits incorporated into the Complaint, and public dockets, of which this Court may take judicial notice. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

University City (the "Hilton") in Philadelphia "in accordance with the medical recommendations of his treating physicians."  (*Id.* at 2, ¶ 7.)  Fisher contends that "residential placement in the community" at the Hilton was the "discharge plan he originally envisioned for himself . . . while awaiting permanent housing."  (*Id.* at 5.)  It appears Pedro did not reside at the Hilton, (*id.* at 2, ¶ 3), but that she was present with Fisher every day to assist him with activities of daily living, (*id.* at 6), and, as noted above, handled his affairs as his mother and caregiver.

At the time they checked into the Hilton, Plaintiffs paid for a four-night stay.  (*Id.* at 8.)  On September 5, 2024, Pedro had a discussion with an Assistant General Manager at the Hilton, Carla Staples, during which she "candidly shared" the nature of Fisher's medical conditions and described the "urgent circumstances" that resulted in him checking into the hotel "under duress . . . for the express purpose of establishing permanent residency . . . within the context of a landlord-tenant relationship" until permanent housing could be secured.  (*Id.* at 6.)  Pedro also explained that they were currently paying for the stay with Fisher's social security savings while pursuing other means of payment.  (*Id.*)  Pedro alleges that Staples recognized the existence of a landlord-tenant relationship at this time.  (*Id.*)

Pedro and Fisher "extended their stay several times" and paid for their stay "in full" through 11:00 a.m. on October 12, 2024, spending a total of $7,511.  (*Id.*)  They contend Fisher "established permanent residence" at the Hilton as of October 4, 2024, the thirty-first day of his stay, and that Pedro had a discussion with a Hilton representative on that date about Fisher's tenancy status.  (*Id.*)  On October 11, 2024, Pedro informed Staples that the funds they were expecting had not arrived and that "they consequently needed rental assistance due to financial hardship."  (*Id.*)  Pedro also "invoked [Fisher's] tenancy rights" by "inform[ing] Ms. Staples of the City of Philadelphia's Eviction Diversion Program, participation in which is mandatory prior to pursing any legal action

2

in a court of law arising from past due rent or to dispossess a tenant of rented property." (*Id.* (emphasis omitted).) Staples told Pedro she would "seek guidance from her superiors" about the situation and would get back to her. (*Id.*)

In an October 12, 2024 phone call, Staples told Pedro that Hilton management "comped" Fisher's payment for the night of October 12, but had also directed her to call the police to remove Fisher from the premises as of 11:00 a.m. on October 13. (*Id.* at 9.) Pedro "advised Ms. Staples that any such action would be unlawful, and she intended to act appropriately to protect her son." (*Id.* (emphasis omitted).) The next morning, Pedro called 911 twice "seeking assistance" in the situation. (*Id.*) At approximately 1:35 p.m., police officers arrived at Fisher's hotel room and had a discussion with Pedro during which she claims to have invoked Fisher's "permanent residence status," "tenancy rights," and eligibility for government assistance, as well as their "right to due process." (*Id.*) Ultimately, the police left without taking any action, although Pedro claims she heard one of the officers advise Ms. Staples "to pursue a legal action against [them] for eviction in landlord-tenant court." (*Id.*) Pedro also alleges that Staples lied about comping the payment for October 12 and improperly charged Pedro's credit card, which Pedro characterizes as "discrimination and retaliation in direct response to [their] assertion of [Fisher's] tenancy rights." (*Id.* (emphasis omitted).)

On October 15, Pedro awoke in the hotel room with itchy bumps and welts on her right leg. (*Id.* at 15.) She emailed various Hilton employees to inform them of the situation, (*id.* at 13-17), and saw a dermatologist who recommended "topical treatment" and "switching rooms/lodging" on suspicion that bed bug bites were the cause of the bumps, (*id.* at 18). Following the dermatology appointment, Hilton relocated Pedro and Fisher to a new room for the evening of October 15. (*Id.*)

3

On October 17, Pedro and Fisher moved their belongings out of the old room except for six bags of laundry they left based on Staples's concern that they could transport bed bugs to the new room. (*Id.* at 19-21.) Pedro communicated this information to General Manager Nancy Gasperetti via email, along with her expectation that she would take care of the laundry on October 18. (*Id.* at 19.) Pedro then emailed Gasperetti on October 18, seeking "a credit of $60.00" to cover the cost of the laundry as a "reasonable accommodation[] for [Fisher], based on his protected characteristic as an individual living with the serious and persistent mental illness of Schizophrenia." (*Id.* at 20-22 (emphasis omitted).)

According to the Complaint, Gasperetti then "conspired with legal counsel"—the law firm of Klehr Harrison Harvey Branzbur, L.L.P. and two attorneys, Michael Paul Bannon and A. Grant Phelan (together the "legal defendants") — and entities associated with the Hilton property — Campus Realty Properties V, L.P.; Hersha Hospitality Trust; and Hersha Hospitality Management, L.P. (together "Hotel entities") — "to illegally discriminate and retaliate" against Pedro and Fisher for exercising their rights by filing an ejectment action against them in the Philadelphia Court of Common Pleas on October 23 along with a motion for preliminary injunctive relief. (*Id.* at 23 (emphasis omitted); *see also id.* at 4.); *Hersha Hospitality Mgmt v. Pedro*, No. 241003097 (C.P. Phila.). Pedro and Fisher's Complaint in the instant case — which was filed on October 25 against Hilton Worldwide, Inc., the Hotel entities, Gasperetti, the legal defendants, the City of Philadelphia and Mayor Cherelle Parker — reflects that the ejectment case was scheduled for an emergency hearing at 9:30 a.m. that day.[2] (Compl. at 23; *id.* at 1, 3-4.) The public docket reflects that the state court granted the requested preliminary injunction and directed Pedro and Fisher to vacate

---

[2] The Complaint was docketed in this Court and assigned to the undersigned on October 28, the next business day.

4

the premises at the Hilton immediately as of the date of the order, October 25. *Hersha Hospitality Mgmt v. Pedro*, No. 241003097.

According to Pedro and Fisher's Complaint in the instant case, during their stay, Hilton and the other Hotel entities arbitrarily enforced rules against them "that are not applicable to any white people, including but not limited to enjoying complementary food and beverages in the morning for breakfast and unfettered usage of our personal cell phones in the public space of the hotel lobby where there is no expectation of privacy."[3] (Compl. at 24 (emphasis omitted).) Pedro and Fisher also allege that Hilton and the Hotel entities are essentially seeking to evade their responsibilities under landlord-tenant law and weaponize the Philadelphia Police Department to evict them. (*Id.*) They claim these actions are being taken "with the knowledge and assent of Mayor Parker and the City of Philadelphia municipal government under the Tyrannical Parker Administration of Frauds & Scams, Lies & Deception, Public Corruption and Cronyism." (*Id.* (emphasis omitted).)

In the meantime, despite Pedro and Fisher's removal from the premises, the ejectment action is still pending in state court. *Id.* In her answer in state court, filed on November 13, 2024, Pedro asserted that she and Fisher "have absolutely NO desire to EVER return to the [Hilton] now or at any time in the future." *Hersha Hospitality Mgmt v. Pedro*, No. 241003097 (bold and underline omitted). In his Motion to Proceed *In Forma Pauperis* filed in this Court on December 20, 2024, Fisher alleges that he is currently homeless, confirming that he no longer resides at the Hilton. (ECF No. 4 a 3, 5.)

---

[3] Pedro has also asserted racism, discrimination, and retaliation in her answer and new matter filed in state court. *Hersha Hospitality Mgmt v. Pedro*, No. 241003097. Pedro is a Puerto Rican woman "with deeply melanated skin," and Fisher is "an Afro-Latino young man" who also has "deeply melanated skin." (Compl. at 2, ¶¶ 1, 6).

Based on these events, Pedro and Fisher bring the following claims pursuant to the Court's federal question and diversity jurisdiction: (1) 42 U.S.C. § 1983 and unspecified provisions of the United States Constitution; (2) the Americans with Disabilities Act ("ADA"); (3) Section 504 of the Rehabilitation Act ("RA"); (4) unspecified provisions of the Civil Rights Act of 1964; (5) the Fair Housing Act ("FHA"); (6) 42 U.S.C. § 1981; (7) the Pennsylvania Constitution; and (8) various Pennsylvania statutes and provisions of the Philadelphia Code that pertain to matters of lodging, housing, and residency. (Compl. at 5.) They seek unspecified injunctive relief, declaratory judgment, and punitive and compensatory damages. (*Id.* at 24.)

## II.   STANDARD OF REVIEW

The Court grants Plaintiffs leave to proceed *in forma pauperis* because it appears that they do not have the ability to pre-pay the fees to commence this case. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the court to dismiss the complaint if it fails to state a claim. To state a claim, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). However, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala v. Crown Bay*

6

*Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)).  An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.*

Furthermore, the Court must dismiss any claims over which it lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Grp. Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*").  A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction.  *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence.").  The Court's continuing obligation to assure its jurisdiction includes an assessment of whether a case has become moot.  *See Seneca Res. Corp. v. Twp. of Highland, Elk Cty., Pa.*, 863 F.3d 245, 252 (3d Cir. 2017) ("Our 'continuing obligation' to assure that we have jurisdiction requires that we raise issues of standing and mootness sua sponte.").

### III.  DISCUSSION

#### A.  Claims for Prospective Relief

To the extent Pedro and Fisher seek injunctive or declaratory relief, their claims are moot. "The constitutional requirement that the exercise of judicial power depends upon the existence of a case or controversy has three elements: '(1) a legal controversy that is real and not hypothetical, (2) a legal controversy that affects an individual in a concrete manner so as to provide the factual predicate for reasoned adjudication, and (3) a legal controversy with sufficiently adverse parties so as to sharpen the issues for judicial resolution.'"  *United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Gov't of V.I.*, 842 F.3d 201, 207-08

(3d Cir. 2016) (quoting *Int'l Bhd. Of Boilermakers v. Kelly*, 815 F.2d 912, 915 (3d Cir. 1987)). "A case is moot when 'the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Id.* (quoting *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). "The central question of all mootness problems is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *Rendell v. Rumsfeld*, 484 F.3d 236, 240 (3d Cir. 2007) (quoting *In re Surrick*, 338 F.3d 224, 230 (3d Cir. 2003)).

Here, this Court cannot discern any basis for awarding prospective injunctive or declaratory relief now that Pedro and Fisher no longer reside at the Hilton. In other words, since Pedro and Fisher have been removed from the Hilton and do not intend to return, any claims for prospective relief are moot. *See Hayes v. Harvey*, 903 F.3d 32, 40 (3d Cir. 2018) (*en banc*) (concluding that litigant's claims related to section 8 voucher program were mooted when he moved out of apartment at issue); *Bellocchio v. New Jersey Dep't of Env't Prot.*, 602 F. App'x 876, 879 (3d Cir. 2015) (*per curiam*) ("As an initial matter, Bellocchio's claims for injunctive relief against all Defendants are moot, as the Bellocchios moved from their home."). Accordingly, the Court will dismiss all claims for injunctive and declaratory relief.

### B. Section 1983 Claims and Claims Against the City of Philadelphia and Mayor Parker

Plaintiffs assert constitutional claims pursuant to § 1983, the vehicle by which federal constitutional claims may be brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and/or laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "The color of state law element is a threshold issue;

8

there is no liability under § 1983 for those not acting under color of law." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995).

Whether a defendant is acting under color of state law — *i.e.*, whether the defendant is a state actor — depends on whether there is "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). "To answer that question, [the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted). "Action taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999). Rather, to support a finding of state action, "the government must be 'responsible for the specific conduct of which the plaintiff complains.'" *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).

"A private party 'who corruptly conspire[s]' with a state official will be considered a state actor under § 1983." *Kitko v. Young*, 575 F. App'x 21, 26 (3d Cir. 2014) (*per curiam*) (quoting *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175-76 (3d Cir. 2010)). However, "to properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co.*, 615 F.3d at

9

178. "[A] bare assertion of conspiracy will not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Plaintiffs' § 1983 claims appear to be based on a theory that Hilton, the Hilton entities, the legal defendants, and Gasperetti, all of whom are private actors, may be considered state actors either because the City of Philadelphia and Mayor Parker "assent[ed]" to their conduct or because they sought or might seek police assistance in evicting Pedro and Fisher. (Compl. at 24.) However, a private actor does not transform into a state actor by seeking police assistance or filing a police report against others, even if the allegations made to police are false. *Sous v. Timpone*, No. 15-7972, 2016 WL 2625325, at *4 (D.N.J. May 9, 2016) ("Complaining in person to the police or filing a civilian criminal complaint are not acts of the State; they are acts that anyone can do. Filing a report or a civilian complaint does not transform a private citizen into a State actor." (citing *Boyce v. Eggers*, 513 F. Supp. 2d 139, 144-45 (D.N.J. 2007)); *Baack v. Rodgers*, No. 14-875, 2014 WL 4632380, at *1, 3 (E.D. Pa. Sept. 17, 2014) ("[R]eporting suspicious conduct to the police—or answering police questions about that conduct—without more, does not transform the Hospital Defendants into state actors" (citations omitted)); *Collins v. Christie*, No. 06-4702, 2007 WL 2407105, at *4 (E.D. Pa. Aug. 22, 2007) ("[E]ven if Dr. Columbo intentionally provided the false information to the police, the plaintiff would still fail to state a claim under § 1983."); *O'Neil v. Beck*, No. 04-2825, 2005 WL 2030319, at *2 (M.D. Pa. Aug. 4, 2005) (concluding that allegations that a private citizen filed a false police report and wanted to see the plaintiff arrested are "simply insufficient" to establish that the private citizen is a state actor for purposes of a claim brought pursuant to section 1983).

Overall, the Complaint offers only allegations of conspiracy and municipal "assent" as a basis for Pedro and Fisher's assertion of joint action that are wholly conclusory and, accordingly,

do not give rise to a conspiracy claim or a sufficient basis to treat the private defendants (Hilton, the Hilton entities, the legal defendants, and Gasperetti) as state actors who could be subject to liability under § 1983.  *See Great W. Mining & Mineral Co.*, 615 F.3d at 179 (no conspiracy claim where plaintiff "failed to allege except in general terms the approximate time when the agreement was made, the specific parties to the agreement . . . , the period of the conspiracy, or the object of the conspiracy"); *see also Pittman v. Martin*, 569 F. App'x 89, 91-92 (3d Cir. 2014) (*per curiam*) (explaining that "conclusory allegations of conspiracy" were "insufficient from a pleading perspective" to justify treating non-state actors as state actors); *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 612 (3d Cir. 2011) (noting that "mere approval is not state action" when a state actor "approves" a private actor's choice or conduct).  Conversely, there is no basis for a § 1983 claim, or any other claim, against the City or Mayor Parker because the Complaint does not provide any legal basis for holding them liable for the private action at issue — *i.e.*, how Pedro and Fisher were treated during their stay at the Hilton and as a result of the state court ejectment action — and because the Complaint does not allege any conduct taken by the City or Mayor Parker that amounts to a plausible constitutional violation.  Accordingly, the Court will dismiss all of Pedro and Fisher's § 1983 claims as well as any other claims against the City and Mayor Parker.

**Claims Under the RA and ADA**

Pedro and Fisher assert claims for disability discrimination under the RA and ADA.  Section 504 of the RA prohibits disability discrimination in "any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  The proper defendant under an RA claim is the entity receiving federal assistance.  *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 804 (3d Cir. 2007) (stating that "suits may be brought pursuant to Section 504 against recipients of federal financial assistance, but not against individuals").  Title III of the ADA prohibits places of public

11

accommodation from discriminating against individuals with disabilities in connection with goods, services, facilities, privileges, advantages or accommodations. 42 U.S.C. § 12182(a). However, only injunctive relief is available to a private plaintiff suing under Title III of the ADA, meaning monetary relief is not available. 42 U.S.C. § 12188(a); *Bowers v. Nat'l Collegiate Athletic Ass'n*, 346 F.3d 402, 433 (3d Cir. 2003) ("Title III defendants cannot be liable for money damages."); *see also Abadi v. Target Corp.*, No. 23-1050, 2023 WL 4045373, at *2 (3d Cir. June 16, 2023) ("Title III of the ADA, which prohibits discrimination on the basis of disability in public accommodations, only provides for injunctive relief." (citation omitted)). Since there is no allegation in the Complaint that any of the remaining Defendants — Hilton, the Hilton entities, the legal defendants, and Gasperetti — are entities that receive federal assistance such that they could be subject to liability under the RA, the Court will dismiss any RA claims. The ADA claims must also be dismissed because, as noted above, Title III only provides for injunctive relief and Plaintiffs' claims for injunctive relief are moot, *see supra* § III.A.

### C. Civil Rights Act of 1964

Pedro and Fisher also invoke the Civil Rights Act of 1964 as a legal source of their claims. (Compl. at 5.) The provision most relevant to their claims is Title II, which prohibits race discrimination in the "enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation," including hotels. 42 U.S.C. § 2000a(a)-(b). However, "Title II of the Civil Rights Act of 1964 allows only claims for injunctive relief, not those seeking damages." *Goode v. United States Dep't of Homeland Sec.*, 815 F. App'x 643, 645 (3d Cir. 2020) (citing *Newman v. Piggie Park Enters. Inc.*, 390 U.S. 400, 402 (1968) and 42

12

U.S.C. § 2000a-3(a)). Since Pedro and Fisher's claims for injunctive relief are moot, *see supra* § III.A., they cannot recover under Title II, therefore, the Court will dismiss their claims.

### D. Claims Under Section 1981 and the FHA

The crux of Pedro and Fisher's Complaint is that they were discriminated against based on their race and Fisher's disabilities during their residency at the Hilton and when they were ejected from the Hilton. Pedro and Fisher also claim to have been retaliated against for asserting their rights under landlord-tenant law and seeking accommodations for Fisher's disability. Having dismissed Pedro and Fisher's other federal claims, the Court will analyze these allegations under the remaining statutes they invoke, the FHA and 42 U.S.C. § 1981.

The FHA prohibits discrimination based on race, color, religion, sex, familial status, national origin or disability in the rental or sale of a dwelling. *See* 42 U.S.C. § 3604. Disability discrimination in this context includes, *inter alia*, "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a] person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).[4] The FHA also makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right granted or protected by section . . . 3604 . . . of this title." 42 U.S.C. § 3617. The regulations associated with § 3617

---

[4] " To determine whether an accommodation is reasonable, . . . [a court must] consider whether the requested accommodation is (1) reasonable and (2) necessary to (3) afford handicapped persons an equal opportunity to use and enjoy housing." *Revock v. Cowpet Bay W. Condominium Ass'n*, 853 F.3d 96, 110 (3d Cir. 2017) (internal quotations omitted). "Necessary suggests something that cannot be done without, and thus is treated as requiring a causal link that examines whether the accommodation sought will redress injuries that otherwise would have prevented disabled individuals from the same enjoyment or access to the property as non-disabled persons." *Schueller v. Pennypack Woods Home Ownership Assoc.*, No. 19-178, 2021 WL 7285246, at *4 (E.D. Pa. Dec. 22, 2021) (internal quotations and citations omitted). "Whether there has been a 'refusal' to provide a reasonable accommodation under the Fair Housing Act depends on the circumstances." *Revock*, 853 F.3d at 110.

make clear that the section prohibits acts directed at individuals "because of" their membership in a protected class. 24 C.F.R. § 100.400(c)(2) (listing prohibited conduct to include "[t]hreatening, intimidating or interfering with persons in their enjoyment of a dwelling *because of* the race, color, religion, sex, handicap, familial status, or national origin of such persons" (emphasis added)).

Section 1981 prohibits private acts of race discrimination in connection with making and enforcing contracts. *See Anjelino v. New York Times Co.*, 200 F.3d 73, 98 (3d Cir. 1999) (Section 1981, "on its face, is limited to issues of racial discrimination in the making and enforcing of contracts"). "[T]o establish a basis for relief under section 1981 a plaintiff must show '(1) that he belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981.'" *Est. of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 797 (3d Cir. 2010) (quoting *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 569 (3d Cir. 2002)). "Section 1981 'can only be violated by intentional discrimination,' thus, a plaintiff must allege a specific factual basis to create an inference of a defendant's intent to discriminate." *Roberts v. Health Partners Plans, Inc.*, No. 17-0297, 2017 WL 3310691, at *2 (E.D. Pa. Aug. 3, 2017) (quoting *Occasion v. Lehigh Valley Family Health Ctr.*, 92 F. App'x 876, 880 (3d Cir. 2004)). In general, to state a claim for unlawful discrimination, a plaintiff must "put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element," *i.e.*, that she was discriminated against in violation of the law. *See generally Fowler v. UMPC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quotations omitted). To assert a retaliation claim under § 1981, a plaintiff must allege facts showing that they engaged in a protected activity, meaning conduct that would itself amount to a

violation of § 1981 or an act attempting to protect or secure rights under the statute. *Roberts*, 2017 WL 3310691, at *3.

The factual allegations in the Complaint do not support an inference that Pedro and Fisher were discriminated against based on their race or Fisher's mental health conditions or that they were retaliated against for any protected activity. To the contrary, the facts as pled reflect that Hilton filed the ejectment case once it was apparent that Pedro and Fisher could no longer pay for their lodging. Although the Complaint baldly describes the Defendants conduct as discriminatory and retaliatory, no facts support those accusations. Accordingly, Pedro and Fisher have not stated a discrimination or retaliation claim under the FHA or § 1981 based on their ejectment from the Hilton. *See Davis v. Rubin*, No. 22-1472, 2022 WL 3037254, at *2 (3d Cir. Aug. 2, 2022) (*per curiam*) (holding that plaintiff's allegations that she was evicted from section 8 housing after complaining of conflicts with neighbors and receiving "inconsistent information about how she could tender her months-belated security deposit" did not "reveal[] a plausible disability-based discrimination claim under the FHA"); *Dew v. S. Columbia Terrace, LLC*, 854 F. App'x 460, 462 (3d Cir. 2021) (*per curiam*) (affirming dismissal of FHA claim because source of income is not protected by the FHA); *Wilson v. Hillsborough Twp. Constr. Dep't*, 779 F. App'x 969, 972 (3d Cir. 2019) (*per curiam*) ("[E]ven if Wilson could bring a claim under the FHA for defendants' licensing, inspection, and tax assessment decisions, her vague, conclusory speculations that those decisions were made for a discriminatory reason are insufficient to state a claim under the FHA."); *Gross v. R.T. Reynolds, Inc.*, 487 F. App'x 711, 716 (3d Cir. 2012) ("While the Amended Complaint alleges an abundance of wrongdoing by Reynolds and its employees, it fails to allege any facts supporting the conclusion that those acts were motivated by discrimination on the basis of race. Instead, it alleges a series of unfortunate events and then states, in conclusory fashion, that

the reason for those events is that Reynolds harbored discriminatory animus towards Gross or White."); *Davis v. Rubin*, No. 20-6271, 2020 WL 7624833, at *3 (E.D. Pa. Dec. 22, 2020) (dismissing FHA interference and retaliation claims on screening where plaintiff did not link alleged harassment to "her exercise or enjoyment of a right under the FHA" and does not allege a protected activity involving complaints about discrimination); *Jones v. 1260 Hous. Dev. Corp.*, No. 18-1420, 2018 WL 1757605, at *3 (E.D. Pa. Apr. 11, 2018) (dismissing FHA claim as conclusory because "while Mr. Jones mentions that he is African-American, nothing in the Complaint suggests that the 1206 Housing Development Corporation evicted him based upon his race"); *Palencar v. Raijski*, No. 15-1189, 2016 WL 6908116, at *5 (M.D. Pa. Nov. 9, 2016) ("The Fair Housing Act does not[] . . . create some general federal cause of action governing landlord-tenant disputes."), *report and recommendation adopted*, No. 15-1189, 2016 WL 6892841 (M.D. Pa. Nov. 23, 2016).

The Complaint's attempt to frame the Hilton's apparent refusal to pay Pedro $60.00 so she could do her and Fisher's laundry following the bed bug incident as a failure to accommodate Fisher's disability also does not state a plausible FHA claim. *See Lloyd v. Manbel Devco I LP.*, No. 23-2261, 2024 WL 811714, at *7 (E.D. Pa. Feb. 27, 2024) (dismissing FHAA reasonable accommodation claim because plaintiff failed to plead a nexus between her disability and the alleged refusal to accommodate); *Fair Hous. Rts. Ctr. in Se. Pennsylvania v. Morgan Properties Mgmt. Co., LLC*, No. 16-4677, 2018 WL 4489653, at *3 (E.D. Pa. Sept. 19, 2018) (observing that the FHA does not require "financial accommodations for disabled tenants"). Similarly, Pedro and Fisher's allegations that assorted rules were generally applied to them in a manner that were not applied to white people, without any explanation about when these alleged incidents occurred and why they support an inference of race discrimination, render any FHA or § 1981 claims for race

discrimination implausible.  *See, e.g.*, *Holmes v. Fed Ex*, 556 F. App'x 150, 151 (3d Cir. 2014) (*per curiam*) ("Holmes relies on Benedict's awareness of her race, but that mere awareness, particularly in light of the conclusory nature of Holmes's other allegations, is patently insufficient to raise an inference of discrimination under § 1981.").  In sum, Pedro and Fisher's allegations of discrimination and retaliation are unsupported conclusory assertions that fail to state a plausible claim for race or disability discrimination or retaliation.

### E. The Court Lacks Jurisdiction Over the Remaining State Law Claims

Having dismissed all of Pedro and Fisher's federal claims, the Court concludes it lacks jurisdiction over their remaining claims.[5]  District courts may exercise jurisdiction over cases raising claims exclusively under state law if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a).  "Complete diversity requires that, in cases with multiple plaintiffs or multiple defendants, no plaintiff be a citizen of the same state as any defendant."  *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010).  For diversity purposes, an individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain.  *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011).  A corporation is a citizen of the state in which it is incorporated and the state in which it has its principal place of business.  *See* 28 U.S.C. § 1332(c).  In contrast, "the citizenship of an LLC [or other unincorporated entity] is determined by the citizenship of its members."  *Zambelli*, 592 F.3d at 420.  "[W]here an LLC has, as one of its members, another LLC, the citizenship of unincorporated associations must be traced through however many layers of partners or members there may be to determine the citizenship of the LLC."  *Id.* (internal quotations omitted); *see also Voorhees v. Tolia*, 761 F. App'x

---

[5]   The Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims, having dismissed all federal claims.

88, 91 (3d Cir. 2019) (*per curiam*) ("As for the entity defendants, they are limited liability companies and are deemed citizens of every state of which one of their members is a citizen."). A political subdivision of a state is a citizen of the state for purposes of determining diversity jurisdiction. *See Doolin v. Kasin*, 424 F. App'x 106, 109 (3d Cir. 2011) (citing *Moor v. Alameda County*, 411 U.S. 693, 717 (1973)). Since it is apparent that Plaintiffs and at least some of the Defendants are Pennsylvania citizens, diversity is lacking. Accordingly, the Court will dismiss the remaining state law claims for lack of subject matter jurisdiction.

**IV.    CONCLUSION**

For the reasons provided, the Court will grant Plaintiffs leave to proceed *in forma pauperis* and dismiss their Complaint. Considering their *pro se* status, Pedro and Fisher will be given leave to file an amended complaint in the event they can cure the defects in those claims that are not mooted. An order follows, which provides further guidance as to amendment.

*NITZA I. QUIÑONES ALEJANDRO, J.*